```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


NEIL R. HARRINGTON, et al.,   )
                              )
     Plaintiffs,              )
                              )
         v.                   )     1:08cv336 (JCC)
                              )
SPRINT NEXTEL CORPORATION,    )
et al.,                       )
                              )
     Defendants.              )
```

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion to Dismiss. For the following reasons, this Motion will be denied.

### **I. Background**

This case arises out of the termination of Plaintiffs Neil Harrington ("Mr. Harrington") and John Kiely ("Mr. Kiely") (collectively, the "Plaintiffs"), from the employ of Sprint/United Management Company ("Sprint") by Human Resources Manager Charles Roberts ("Mr. Roberts") (collectively, the "Defendants").

Both Plaintiffs had received commendations for outstanding job performance, with no former warnings or

-1-

reprimands for misconduct.[1]  Despite these accolades, on December 18, 2005, they were terminated.  Mr. Harrington was 51 at the time of the termination, and Mr. Kiely was 53.  Sprint told Mr. Harrington he was fired for use of email in violation of Sprint's policies: sending a personal email in 2005.  Mr. Kiely was terminated for misuse of computer equipment due to possession of inappropriate files on his company laptop, files he had never seen.  Mr. Roberts and Sprint gave fabricated reasons for the hiring and lied about Sprint's policies, including allegations that Plaintiffs violated Sprint's previously unmentioned "Zero Tolerance Policy."  Both Plaintiffs requested review of the termination decisions in accord with the procedures provided by Sprint's Alternative Dispute Resolution ("ADR") policy, but the relevant procedures were not followed.  Plaintiffs were also accused, in front of others, of unethical behaviors, accusations which prejudiced their business relations and caused them physical and emotional distress.  As a consequence of Sprint's and Mr. Robert's actions, Plaintiffs have suffered financial loss and physical harm.

On April 8, 2008, Plaintiffs filed an eight-count Complaint.  Against Sprint alone, they alleged Breach of Contract (Counts I and II); age discrimination in violation of the Age

---

[1] "For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted," and are therefore set forth as described by Plaintiffs.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

Discrimination Employment Act ("ADEA") (Count IV); and defamation and defamation per se (Count V).  Plaintiffs alleged Tortious Interference with Contractual Relations and Business Expectancy against Mr. Roberts alone (Count VI).  Against both Defendants, Plaintiffs alleged Intentional Infliction of Emotional Distress (Count III) and Actual and Constructive Fraud (Counts VII and VIII).

On April 30, 2008, Defendants filed a Motion to Dismiss with respect to Counts I, II, III, V, VI, VII, and VIII of the Complaint.  Plaintiffs filed an Opposition on May 14, 2008, and Defendants replied on May 21, 2008.  This Motion is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).

Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

### III. Analysis

#### A) Exhibits attached to Defendants' Memorandum

Defendants attached three exhibits to its Memorandum in Support of Motion to Dismiss. "As a general rule, in the context of a motion to dismiss under Rule 12(b), the court may not consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment." *Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 736 (E.D. Va. 2002)(citing *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985)). Documents the Court may consider include those "that are either attached to, or referenced in, the complaint." *Id.* (citing *Moore v. Flagstar Bank, et al.*, 6 F. Supp. 2d 496 (E.D. Va. 1997)). The exhibits are purported to be a copy of the Employee Guide and alternative dispute resolution policy referenced in the

Complaint.  The third exhibit is titled "Sprint Nextel Computer and Network Security Usage Policy," the document Defendants assert is referred to in the Complaint as Sprint's "Zero Tolerance Policy."

Plaintiffs argue that the documents in question are Sprint's internal documents that have not been subject to discovery.  Plaintiffs assert that the attached documents are not of unquestioned authenticity and should therefore not be considered by this Court as part of the Motion to Dismiss.  In particular, Plaintiffs point out that the Employee Guide has been amended and is not that referred to in the Complaint.  Due to the disputed authenticity of the documents, the Court will not consider them at this stage of the proceedings.

**B)** **Counts I and II: Breach of Contract**

Defendants argue that Plaintiffs were at-will employees who did not have any employment contract with Defendants. Plaintiffs argue not that they were not at-will employees, but that the Employee Guide and the ADR policy formed contracts regarding "provisions that will govern the parties' conduct as long as the employee is employed."  Pl.'s Opp'n to Def.'s Mot. to Dismiss at 10.  Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff

caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (Va. 2004)(citations omitted). Plaintiffs argue that Defendants breached their obligation to follow the provisions in the Employee Guide by inappropriately firing Plaintiffs for allowed conduct and for failing to follow the agreed-upon procedures for dispute resolution. Defendants emphasize that Plaintiffs were at-will employees and therefore could be fired at any time for any reason, and assert that nothing in the Employee Guide changed this arrangement.

Courts applying Virginia law have "conclude[d] that the employee at-will doctrine is merely a rebuttable presumption and not a substantive rule of law." *Thompson v. American Motor Inns, Inc.*, 623 F. Supp. 409, 416 (W.D. Va. 1985) (finding that the employee handbook in question created an employment contract). However, Virginia courts have also held that "[a] clear disclaimer in an employee manual effectively negates any other provisions or attempts to rebut the at-will presumption," a disclaimer Defendant alleges is included in the Employee Guide. *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 454 (4th Cir. 2004)(citing *Nguyen v. CNA Corp.*, 44 F.3d 234, 239 (4th Cir. 1995)) (applying Virginia law). Not only were *Walton* and *Nguyen* summary judgment decisions, but Plaintiffs also distinguish their allegations from those plaintiffs'. Rather than argue that the handbooks had replaced at-will employment, Plaintiffs Harrington

and Kiely assert that the contract created by the Employee Guide and ADR policy governed the methods of termination, including a graduated disciplinary response.  Pl.'s Mem. at 14-15.  Plaintiffs do not dispute their at-will status.  They allege that the breached contract at issue governed the parties' conduct during employment.

A Motion to Dismiss is not the appropriate setting for this Court to weigh evidence to determine whether Plaintiffs have rebutted the presumption of at-will employment or whether the alleged contract survives the disclaimer Defendant posits is included in the Employee Guide.  Therefore, Counts One and Two, for breach of contract, will not be dismissed.

### C) Count III: Intentional Infliction of Emotional Distress

In Virginia, the tort of intentional infliction of emotional distress has four elements that must be proved: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe."  *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006)(citing *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)).  Due to "the risks inherent in torts where injury to the mind or emotions is claimed, such torts are not favored in the law" of Virginia.  *Id.* (quotations omitted).  Unlike "a claim of negligence, a plaintiff alleging a

claim for intentional infliction of emotional distress must allege in her motion for judgment all facts necessary to establish the cause of action in order to withstand challenge on demurrer." *Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007) (citing *Harris*, 624 S.E.2d at 33; *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991)). Defendants attack Plaintiffs' Complaint on two grounds: failing to allege outrageous and intolerable conduct, and failing to allege severe emotional distress. The Court "must consider whether [Plaintiff] alleged sufficient facts to establish each element of the tort." *Id.*

       1) <u>Outrageous and Intolerable Conduct</u>

Liability for intolerable conduct "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)(citing Restatement (Second) of Torts § 46 comment d (1965)); *see also Harris,* 624 S.E.2d at 34. Under Virginia law, "[w]hen reasonable persons could view alleged conduct in this manner and the other elements of the tort are properly pleaded, the controversy must be resolved at a trial on the merits of the claim." *Almy*, 639 S.E.2d 182, 187 (citations omitted).

Although termination of employment does not rise to the level of intolerable conduct, the allegedly outrageous conduct

-8-

suffered by Plaintiffs was "of defendants engaged in a scheme orchestrated to accuse the Plaintiffs of harboring and disseminating pornography." Pl.'s Mem. at 20. The Court concludes that reasonable persons could consider the behavior alleged by Plaintiffs, if proved, to be atrocious and intolerable in a civilized community.

        2) <u>Severe Emotional Distress</u>

"Liability for intentional infliction of emotional distress 'arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it.'" *Harris*, 624 S.E.2d at 34 (quoting *Russo v. White*, 400 S.E.2d at 163). Plaintiffs have alleged that they have suffered injuries including "pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses." Compl. ¶ 193. The Complaint alleges that Mr. Harrington "has suffered severe emotional distress, with physical manifestations," and that Mr. Kiely "suffered severe emotional distress, with physical manifestations, including becoming physically ill and nearly collapsing upon hearing news of his shocking termination. Mr. Kiely continues to be treated under a doctor's care." Compl. ¶¶ 189, 190. Plaintiffs argue

that these allegations exceed those claimed by the plaintiffs in *Russo v. White*, 400 S.E.2d 160 (Va. 1991) and *Harris v. Kruetzer,* 624 S.E.2d 24 (Va. 2006), which the Virginia Supreme Court found insufficiently severe to survive a demurrer.

The *Russo* Court found the plaintiff's allegations to be conclusory, failing to claim "that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." 400 S.E.2d at 163. Harris similarly only alleged psychological injury. 624 S.E.2d at 34. Considering the allegations in the light most favorable to Plaintiffs, the Court finds that their allegations of physical manifestation and lost wages are more severe than those in *Russo* and *Harris* and will therefore survive this Motion to Dismiss. Count Three of the Complaint, alleging intentional infliction of emotional distress, will not be dismissed for failure to state a claim on which relief can be granted.

### D) **Count IV: Violation of ADEA**

Plaintiffs assert that because Defendants have not filed any responsive pleadings to Plaintiffs' Count IV, Plaintiffs are entitled to judgment by default as to liability on that count. Defendant argues that filing its Motion to Dismiss postponed its Federal Rule of Civil Procedure 12 deadline for filing an answer as to all claims, not just those that are

subject to the Motion.  The Court agrees, following the lead of other courts in this Circuit.  "In the interests of efficiency for all parties, including the courts, it is best to stall the proceedings on all counts until after the court rules on the Rule 12(b)(6) motion." *Godlewski v. Affiliated Computer Servs.*, 210 F.R.D. 571, 572 (E.D. Va. 2002)(quoting *Ricciuti v. New York City Transit Auth.*, 1991 WL 221110 at *2, 1991 U.S. Dist. LEXIS 13981 at *5 (S.D. N.Y. 1991)); *see also FDIC v. Heidrick*, 812 F. Supp. 586, 591 (D. Md. 1991).

**E) Count V: Defamation**

Defendants argue that Plaintiffs' defamation claim should be dismissed due to their failure to state the defamation claim with sufficient particularity.  They assert that Plaintiffs "fail to state in their Complaint the exact words fo the alleged defamatory statement and make only vague references" to the persons who made the statements and to the statements' audience. Def.'s Mem. at 7.

1) Defamatory Statement

Applying Virginia law, the Fourth Circuit has made it clear that "a defamation complaint must only provide a 'short and plain' statement of the claim that is sufficient to give the defendant fair notice of the nature of the claim and the grounds upon which it rests."  *Southprint, Inc. v. H3, Inc.*, 208 Fed. Appx. 249, 254 n2 (4th Cir. 2006)(citing *Hatfill v. N.Y. Times*

-11-

*Co.*, 416 F.3d 320, 329 (4th Cir. 2005); Fed. R. Civ. P. 8(a)(2)). Indeed, the Fourth Circuit has declared it to be error to "appl[y] a stricter standard to [a plaintiff's] complaint than the ordinary standards under Rule 12(b)(6)." *Hatfill*, 416 F.3d at 329-30.

"At common law, defamatory words that prejudice a person in his or her profession or trade are actionable as defamation per se." *Union of Needletrades, Indus. & Textile Emples. v. Jones*, 603 S.E.2d 920, 924 (Va. 2004)(citing *Fuste v. Riverside Healthcare Association, Inc.*, 265 Va. 127, 132, 575 S.E.2d 858, 861 (2003)). As for appropriate pleading, "[u]nder Virginia law, a plaintiff seeking to recover for defamation per se must allege a publication of false information concerning the plaintiff that tends to defame the plaintiff's reputation." *Id.* (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)); *see also Southprint*, 208 Fed. Appx. at 254 (allegations of "'false, misleading and disparaging statements' that 'defamed' [Plaintiff] and damaged its reputation in the industry . . . [are] sufficient to state a defamation per se claim under the liberal, federal rules of pleading").

The Complaint alleges that Defendant Sprint, through its employees, "made false and defamatory statements to numerous employees and to third parties, stating that Mr. Harrington and Mr. Kiely had been terminated as a result of their violation of

Sprint's 'Zero Tolerance Policy' regarding personal use of company equipment," statements which "were patently and demonstrably false." Compl. ¶ 216. These statements "assert that Mr. Harrington and Mr. Kiely were unfit to perform the duties of their employment and that they lacked integrity," with an effect that "was prejudicial to Mr. Harrington and Mr. Kiely in their reputation and work." Compl. ¶ 220. The Court finds that Plaintiffs have sufficiently alleged statements of false information tending to damage their reputation in the industry.

### 2) Publication to Non-Privileged Third Parties

A qualified privilege exists between co-employees and employers in the course of employment discipline and discharge matters. This doctrine of "qualified privilege" has been applied to "cases involving defamatory statements made between co-employees and employers in the course of employee disciplinary or discharge matters." *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000)(citations omitted). The privilege exists because "an employer, or his proper representatives, [should] be permitted to discuss freely with an employee, or his chosen representatives, charges affecting his employment which have been made against the employee to the employer" without leading to defamation charges. *Id.* (quoting *Chesapeake Ferry Co. v. Hudgins*, 156 S.E. 429, 441 (Va. 1931)).

Defendants argue that Plaintiff fail to identify any

non-employee third party to whom the defamatory statements were made.  In the Complaint, Plaintiffs allege that the defamatory statements were made "to numerous employees and third parties."  Compl. ¶ 216.  Although the third parties are not specifically identified, the Court is to liberally construe the Complaint on a motion to dismiss.  The reasonable inference from the Complaint is that these persons were not employees, such that the qualified privilege would not apply.  Failure to specifically identify the third parties is not fatal to Plaintiffs' claim.  Under Virginia law, "details such as the time and place of the alleged communication, the name of a defendant's agent, and the names of the individuals to whom the defamatory statement was purportedly communicated can be provided in a bill of particulars if not included in a plaintiff's pleading."  *Fuste,* 575 S.E.2d at 862.

In addition, the qualified privilege "may be defeated if the plaintiff proves that the defamatory statement was made maliciously."  *Larimore*, 528 S.E.2d at 121 (citing *Chalkley v. Atlantic Coast Line R.R. Co.*, 150 Va. 301, 306, 143 S.E. 631, 632 (1928)).  Plaintiffs have pled that Sprint was motivated by "spite, ill-will, negligence and malice."  Compl.  ¶ 222.  "[T]he question whether a defendant was actuated by malice, and has abused the occasion and exceeded the privilege is a question of fact for a jury" rather than one for the Court to determine on a Motion to Dismiss.  *Fuste v. Riverside Healthcare Ass'n*, 265 Va.

-14-

127, 135 (Va. 2003)(quoting *Alexandria Gazette Corp. v. West*, 198 Va. 154, 160, 93 S.E.2d 274, 279-80 (1956))(internal quotations omitted).

Plaintiffs have sufficiently stated a claim for defamation.  Count Five will not be dismissed on this Motion.

### F) Count VI: Tortious Interference with Contractual Relations and Business Expectancy

In Virginia, a claim for tortious interference with a contract has four elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."  *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985)(citing *Calbom v. Knudtzon*, 65 Wash. 2d 157, 162-63, 396 P.2d 148, 151 (1964)).  In a situation "when a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed 'improper methods.'"  *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987)(citing *Hechler Chevrolet v. General Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985); Restatement (Second) of Torts § 766

comment g (1979)).

Defendants argue that Plaintiffs have not presented a prima facie case for tortious interference involving an at-will employment contract "because they cannot establish that Charles Roberts employed any methods that were independently tortious or otherwise improper."  Def.'s Mem. at 15.  Under Virginia law, "[m]ethods of interference considered improper are those means that are illegal or independently tortious," including "fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship," as well as those that "violate an established standard of a trade or profession, or involve unethical conduct.  Sharp dealing, overreaching, or unfair competition may also constitute improper methods."  *Duggin*, 360 S.E.2d at 836-37 (citations omitted).  Plaintiffs allege that Mr. Roberts acted improperly "by lying about Sprint's policies, requiring Mr. Harrington to sign a statement acknowledging his violation of a fabricated policy, and by accusing Mr. Kiely of having personal files on his computer he had never seen before."  Compl. ¶ 239.  Although these are not overt breaches of statute, they do fit into the broad category of improper methods under Virginia law.

"A person cannot intentionally interfere with his own contract."  *Fox v. Deese*, 362 S.E.2d 699, 707 (Va. 1987)(citing

*Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985).  In a situation where an employee was "acting within the scope of his employment, then he was an agent of the [employer]" such that "the [employer]'s contract was also his contract, and he could not interfere with it."  *Id.*  Defendants argue that Mr. Roberts was acting as Sprint's agent when performing the alleged wrongful conduct, and, as such, could not interfere with any contractual relation or business expectancy between Plaintiffs and Sprint, but Plaintiffs allege that Mr. Roberts' allegedly fraudulent actions were outside the scope of his employment.  Compl. ¶ 240.[2] In most circumstances, the question of "whether the defendants were acting within the scope of their employment is an issue that requires an evidentiary hearing."  *Fox*, 362 S.E.2d at 708.  However, the Court can dismiss the claim without a hearing if the party fails to allege action outside the scope of the ordinary duties of an employee in that position. *Calkins v. Pacel Corp.*, 2007 U.S. Dist. LEXIS 57380, *4, 2007 WL 2301626, *2. (W.D. Va. 2007).  Because Plaintiffs allege action outside the scope of an ordinary Human Resources Manager's duties, the Court believes further discovery is appropriate on this question and will not

---

[2] In the context of Count III, Plaintiffs allege that Mr. Harris committed the same conduct "while in the course and scope of his employment, and these acts arose out of the execution of his duties."  Compl. ¶ 184. Although Mr. Harris could not perform the same acts both at the behest of and also against the will of his employer, Federal Rule of Civil Procedure 8(d) permits pleadings in the alternative: "A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."  *Id.*

-17-

dismiss Count VI.

### G) Counts VII and VIII: Actual and Constructive Fraud

In Virginia, "a litigant who prosecutes a cause of action for actual fraud must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 296 (Va. 1999) (citing *Bryant v. Peckinpaugh*, 400 S.E.2d 201, 203 (1991); *Winn v. Aleda Constr. Co.*, 315 S.E.2d 193, 195 (1984)). "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)(citing *Nationwide Mut. Ins. Co. v. Hargraves*, 405 S.E.2d 848, 851 (1991); *Kitchen v. Throckmorton*, 286 S.E.2d 673, 676 (1982)).

Defendants do not assert that Plaintiffs fail to properly allege fraud, but instead assert a defense to the claims. On a motion to dismiss, the Court takes the material allegations of the complaint as admitted, liberally construing it in favor of Plaintiffs. *Jenkins*, 395 U.S. at 421. The Court will not consider the merits of any factual dispute at this stage of the proceedings, and will therefore deny Defendants motion to

dismiss as to counts 7 and 8.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be denied.

An appropriate Order will issue.


May 29, 2008                                /s/
Alexandria, Virginia                 James C. Cacheris
                          UNITED STATES DISTRICT COURT JUDGE